## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

ISHMAEL K. WHITAKER,    :
           :
    Plaintiff,   :
           :
    V.      :
           :  NO. 4:21-cv-00215-CDL-MSH
MUSCOGEE COUNTY JAIL, *et al.*, :
           :
    Defendants. :
_____:

### <u>ORDER & RECOMMENDATION</u>

Plaintiff Ishmael K. Whitaker, a detainee in the Muscogee County Jail in Columbus, Georgia, has filed a civil rights complaint under 42 U.S.C. § 1983, Compl., ECF No. 1, and a motion to proceed in this action *in forma pauperis*.  Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 2.  As set forth below, Plaintiff's motion to proceed *in forma pauperis* is **GRANTED**.  Therefore, his complaint is ripe for preliminary review.

On preliminary review, Plaintiff will be allowed to proceed for further factual development on his retaliation claim against Sergeant Sene, as well as on his deliberate indifference to safety claims against Lieutenant Foster, Dr. Patillo, Officer Ferguson, and Mrs. Wells.  It is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim, as set forth below.

### MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

Any court of the United States may authorize the commencement of a civil action, without prepayment of the required filing fee (*in forma pauperis*), if the plaintiff

shows that he is indigent and financially unable to pay the court's filing fee.  *See* 28 U.S.C. § 1915(a).  As permitted by this provision, Plaintiff has moved for leave to proceed *in forma pauperis* in this case.   Mot. For Leave to Proceed *In Forma Pauperis*, ECF No. 5.   Accordingly, because Plaintiff's filings show that he is unable to prepay any portion of the filing fee, Plaintiff's motion to proceed *in forma pauperis* is **GRANTED**.

Plaintiff is, however, still obligated to eventually pay the full balance of the filing fee, in installments, as set forth in § 1915(b).  The district court's filing fee is not refundable, regardless of the outcome of the case, and must therefore be paid in full even if Plaintiff's complaint is dismissed prior to service.   For this reason, the **CLERK** is **DIRECTED** to forward a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated so that withdrawals from his account may commence as payment towards the filing fee, as explained below.

A.  Directions to Plaintiff's Custodian

Because Plaintiff has now been granted leave to proceed *in forma pauperis* in the above-captioned case, it is hereby **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, each month cause to be remitted to the **CLERK** of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's trust account at said institution until the $350.00 filing fee has been paid in full.   The funds shall be collected and withheld by the prison account custodian who shall, on a monthly basis, forward the amount collected as payment towards the filing

fee, provided the amount in the prisoner's account exceeds $10.00. The custodian's collection of payments shall continue until the entire fee has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

B. Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA. Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated. The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments. Plaintiff's complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

**MOTION FOR DOCUMENTARY EVIDENCE**

Plaintiff has also filed a motion for documentary evidence, in which he asks this Court to subpoena a number of pieces of evidence in order for him to prove his case. Mot., ECF No. 4. The materials that Plaintiff requests appear to be in the nature of discovery materials. *See id.* As set forth below, discovery in this case has not yet begun. Once the discovery period is open, Plaintiff must request discovery materials directly from the defendants in this action. Only if the defendants fail to comply with Plaintiff's proper discovery requests should Plaintiff file any motions with the Court

regarding these requests.   *See* Fed. R. Civ. P. 26 (relating to discovery generally); Fed. R. Civ. P. 37 (regarding failure to cooperate in discovery).   Therefore, at this time, the Court will not order the production of these documents, and this motion is **DENIED**.

### PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

I.   Standard of Review

Because he has been granted leave to proceed *in forma pauperis*, Plaintiff's complaint is now ripe for preliminary review.   *See* 28 U.S.C. § 1915A(a) (requiring the screening of prisoner cases) & 28 U.S.C. § 1915(e) (regarding *in forma pauperis* proceedings).   When performing this review, the court must accept all factual allegations in the complaint as true.   *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004).   *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys," and thus, *pro se* claims are "liberally construed."   *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."   *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."   *Id.* (internal quotation marks omitted).   A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original).   In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty*, 50 F.3d 1579, 1582 (11th Cir. 1995).   If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.   <u>Plaintiff's Allegations</u>

In his complaint, Plaintiff asserts that, on November 5, 2021, he told Officer Dent around 7:00 a.m. that he was "hearing voices and having crazy thoughts." Compl. 5, ECF No. 1.   Around 11:30 a.m., Officer Dent returned and told Plaintiff to roll up his property. *Id.*   As Plaintiff was doing so, Sergeant Sene said to Plaintiff, "You're the one around here writing all them grievances and getting everybody in trouble." *Id.*

Plaintiff was then taken to the sally port where Officer Thomas told Plaintiff to put his hands behind his back so that he could handcuff Plaintiff.   *Id.*   At the time, Plaintiff was holding a potato chip bag in which he had prepared some food.   *Id.* Although Officer Thomas had told Plaintiff he could eat the food, Sergeant Sene came over, grabbed the bag from Plaintiff's hand, and threw it on the floor.   *Id.*   Sene also refused to give Plaintiff a snack lunch, but Officer White gave one to Plaintiff.   *Id.*

Plaintiff was then taken to speak to mental health therapist Mrs. White.   *Id.* at 6. Plaintiff explained to her that he was hearing voices and having suicidal thoughts, so Mrs. White ordered that Plaintiff be placed into an H.S.P. cell, which he was.   *Id.*   As he was being placed in the cell, Plaintiff asked for a mattress and blanket, but this request was denied.   *Id.*   The next day, around 6:30 a.m., Sergeant Sene placed another inmate in the H.S.P. cell with Plaintiff and the two other inmates who were also already in the cell.   *Id.*   The new inmate had a blanket, so Plaintiff again asked Sene for a blanket and mattress, but Sene told Plaintiff he was not getting anything.   *Id.* Sene then took the other two inmates to the shower but refused to allow Plaintiff to take a shower at that time.   *Id*.

On November 9, 2021, Plaintiff was moved to a different H.S.P. cell on orders of mental health therapist Mrs. Wells because Plaintiff had been having homicidal thoughts, and Mrs. Wells wanted him housed alone to prevent him from doing harm to others.   *Id.*   The following day, Sergeant Sene came to take Plaintiff to the shower and asked why Plaintiff was in a cell by himself.   *Id.* at 6-7.   Plaintiff explained that he had been having homicidal thoughts, and Sene responded that he was going to get

Plaintiff a roommate.  *Id.* at 7.

Thereafter, Plaintiff heard Sene telling someone from classification that he needed a cell.  *Id.*  Plaintiff was subsequently returned to his cell, and another inmate who was having homicidal thoughts, Smith, was brought in shortly after.  *Id.*  When Sene took Smith to the shower, Smith told Sene that he was placing Smith in the cell with Plaintiff, who was also having homicidal thoughts, and that he hoped Smith would kill Plaintiff.  *Id.*  Smith later told Plaintiff what Sene had said and also that an inmate who was dressed to go to trial had been put into the cell that Smith had been in before being moved to Plaintiff's cell.  *Id.* at 7-8.  Plaintiff asserts that this meant that Sene had lied to classification about needing a cell because the inmate going to trial could have been put into a holding cell while he waited to leave, rather than being put into Smith's cell.  *Id.*

While Plaintiff was in the H.S.P. cells, he was forced to sit and lay on the concrete floor for eight days because he was never given a blanket or mattress.  *Id.* at 8.  On this point, Plaintiff asserts that Sene refused to give Plaintiff a blanket or mattress and that he also told other officers not to give Plaintiff anything.  *Id.*  Plaintiff contends that Sene was retaliating against Plaintiff, subjecting him to cruel and unusual punishment, and conspiring to have Plaintiff murdered.  *Id.*

Next, Plaintiff asserts that, on November 15, 2021, he was having suicidal thoughts again, so he was taken to speak to a mental health therapist.  *Id.* at 9.  After that, Sergeant Moore took Plaintiff back to an H.S.P. cell, again without giving a blanket or mattress although he asked for one.  *Id.*  When Plaintiff had been in the

H.S.P. cell for four days, he told mental health therapist Mrs. Wells that he was still felt suicidal and had cut himself the night before with his fingernail.   *Id.*   Mrs. Wells replied that she had heard that Plaintiff was masturbating and that she was required to discharge him out of the H.S.P. cell on orders of her supervisor, Dr. Patillo, because of this.   *Id.*   Plaintiff again told her that he still felt suicidal, but she said that it was out of her control.   *Id.*

A few hours later, Plaintiff was discharged from the H.S.P. cell and put into a solitary confinement cell.   *Id.*   In that cell, Plaintiff attempted to kill himself by cutting his forearms with a piece of metal that he found on the floor.   *Id.*   Plaintiff asserts that the mental health staff acted with deliberate indifference because he would not have been able to cut himself if they had not discharged him from the H.S.P. cell.   *Id.* Moreover, Plaintiff contends that the only proper reason for discharging inmates from the H.S.P. cells is that they are no longer at risk to themselves and that he was not actually discharged for masturbation but in retaliation for filing grievances and lawsuits relating to the mental health policies and staff members at the jail.   *Id.* at 9-10. Plaintiff further contends that the mental health staff wanted Plaintiff to kill himself and that it was against policy for him not to receive a blanket or mattress during his stay in the H.S.P. cell.   *Id.* at 10.

Plaintiff next alleges that, on November 19, 2021, at around 6:30 p.m. after he had tried to kill himself in the solitary confinement cell, he was put back into an H.S.P. cell by Officer Green, again without a mattress.   *Id.* at 11.   On this occasion, Plaintiff was held in the H.S.P. cell for nine days before being discharged out on November 28,

2021. *Id.* In that time, Plaintiff asked every officer that came to his cell for a mattress but was given a number of excuses about why they could not give him a mattress. *Id.* Plaintiff again contends that this amounted to cruel and unusual punishment and was done in retaliation for his filing grievances and lawsuits against officers at the Muscogee County Jail. *Id.*

On November 23, 2021, at approximately 9:30 a.m., Mrs. Wells came to Plaintiff's cell, where he was being held with two other inmates, and asked Plaintiff if he was still feeling suicidal. *Id.* Plaintiff said that he was feeling both suicidal and homicidal, particularly towards Tyrone Polk, one of his cellmates with whom Plaintiff did not get along. *Id.* Mrs. Wells immediately gave instructions for Plaintiff to be housed alone so that he could not hurt anyone. *Id.* Lieutenant Foster, however, moved the third inmate into a different cell, leaving Plaintiff and Polk in the H.S.P. cell together. *Id.* Mrs. Wells reiterated that she wanted Plaintiff in a cell alone, but Foster said that they were not going to do that and that if something happened, Plaintiff would be given an additional charge. *Id.* at 12. Plaintiff was also told directly that if something happened to Polk, Plaintiff would have charges leveled against him. *Id.*

Mrs. Wells then asked to speak with Polk. *Id.* Polk came to the door and spoke to Mrs. Wells, who asked him a few questions and then said that she was going to discharge him out of the H.S.P. cell so that he and Plaintiff would not be in there together. *Id.* Polk was removed from the cell two hours later, but then he was brought back around 5:00 p.m. by Officer Ferguson. *Id.* Plaintiff told Ferguson that he and Polk did not get along and it was stupid for them to be in there together, but Ferguson

just said that he did not know anything about that situation and was just following orders before walking off.   *Id.*   Plaintiff asserts that Ferguson did know about the problems between Plaintiff and Polk because he had been around earlier in the day.   *Id.*

Around 11:30 that night, Plaintiff opened his eyes to see Polk standing directly over Plaintiff with something in his hand.   *Id.* at 13.   Plaintiff raised his arm to block Polk, but Polk cut Plaintiff on his left arm.   *Id.*   Plaintiff stood up and pushed Polk away before calling for the nurse on duty.   *Id.*   When she came to check on him, Plaintiff showed her his bleeding arm.   *Id.*   Two officers then came and took Plaintiff to medical where an officer took a picture of Plaintiff's left arm.   *Id.*   The nurse then cleaned the wound and bandaged his arm.   *Id.*

Following these events, Plaintiff was placed into an empty H.S.P. cell.   *Id.* Plaintiff asserts that Lieutenant Foster, Officer Ferguson, and other officers were deliberately indifferent to his safety and his mental health needs by ignoring Mrs. Wells' directions for him to be housed alone.   *Id.*   Plaintiff also reiterates his contention that the officers acted in retaliation for Plaintiff filing grievances and getting them into trouble.   *Id.* at 13-14.

     III.    <u>Plaintiff's Claims</u>

        A.    <u>Sergeant Sene</u>

With regard to Sergeant Sene, Plaintiff asserts that, on November 5, 2021, Sene mentioned Plaintiff having filed grievances before throwing Plaintiff's food on the floor and refusing to give Plaintiff a snack lunch.   Thereafter, when Sene put Plaintiff in an H.S.P. cell, he refused to give Plaintiff a blanket or mattress when other detainees had

blankets, and he instructed other officers not to give Plaintiff anything.   Moreover, Sene put inmate Smith into the cell with Plaintiff while both Plaintiff and Smith were having homicidal thoughts and encouraged Smith to kill Plaintiff.   These allegations implicate potential claims for retaliation, cruel and unusual punishment, and deliberate indifference to Plaintiff's safety.

### 1.   Retaliation

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).   Thus, a prisoner litigant may state a claim for retaliation by alleging that (1) he engaged in constitutionally protected speech, (2) he suffered an adverse action likely to "deter a person of ordinary firmness from engaging in such speech," and (3) there was a causal relationship between the speech and the retaliatory action.   *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Here, Plaintiff asserts that he engaged in constitutionally protected speech by filing grievances and lawsuits regarding his treatment in the facility.   Plaintiff also alleges facts suggesting that Sene took adverse actions against Plaintiff including denying him food, refusing him a blanket or mattress, and putting an inmate who was a potential danger to Plaintiff in a cell with him.   And insofar as Plaintiff alleges that Sene made a point of mentioning Plaintiff's grievances, it appears at least arguable that there was a causal connection between Plaintiff's protected speech and these actions. Thus, Plaintiff will be permitted to proceed for further factual development on a retaliation claim against Sene.

2.    Cruel and Unusual Punishment

To state an Eighth Amendment claim for unconstitutional conditions of confinement, a prisoner must allege facts to show the existence of a prison condition that is extreme and poses an unreasonable risk the prisoner's health or safety.[1]   *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).   Additionally, the prisoner must allege facts to show that the defendant acted with deliberate indifference to the condition, which requires that the defendant knew that an excessive risk to health or safety existed but disregarded that risk.   *Id.* at 1289-90.   It has generally been held that that short periods of confinement without a bed or blanket do not violate the Eighth or Fourteenth Amendments where the conditions are temporary and the inmate suffers no physical harm therefrom.   *See Fischer v. Ellegood*, 238 F. Appx. 428, 433 (11th Cir. 2007) (requiring an inmate to sleep on the "bare cement floor" without a mattress for five days does not amount to an Eighth Amendment violation); *McMahon v. Beard,* 583 F.2d 172, 175 (5th Cir. 1978) (concluding that there was no constitutional violation when a pretrial detainee, who had just attempted suicide, was placed in a "strip cell" for ninety days without clothing, a mattress, sheets, or blankets); *Turner v. Warden, GDCP*, 650 F. App'x 695, 701 (11th Cir. 2016) (holding that a prisoner failed to show that being left in a strip cell with no property and in a paper gown for ten days without

---

[1]As noted above, Plaintiff is a pretrial detainee, which means that his allegations regarding the conditions of his confinement are governed by the Fourteenth Amendment.   *Andujar v. Rodriguez,* 486 F.3d 1199, 1203 n. 3 (11th Cir.2007).   The standards for a conditions of confinement claim are the same under the Eighth and Fourteenth Amendments.   *Hamm v. DeKalb County,* 774 F.2d 1567, 1574 (11th Cir. 1985).

food for one day created an unreasonable risk of harm to his health or safety).

In this regard, Plaintiff asserts that Sene refused to provide Plaintiff with a mattress or blanket for days at a time while Plaintiff was being held in the H.S.P. cells. Under the authority set forth above, it does not appear that the conditions Plaintiff complains of in this case rose to the level of a constitutional violation.[2]   Thus, he has not stated a claim based on unconstitutional conditions of confinement against Sene, and it is **RECOMMENDED** that any such claim be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

### 3.    Deliberate Indifference to Safety

With regard to his allegations that Sene placed Smith into the H.S.P. cell with Plaintiff and encouraged Smith to kill Plaintiff, Plaintiff suggests that Sene engaged in conspiracy to commit murder.   Plaintiff makes no allegations to support any conspiracy, as his allegations do not show that anyone else made an agreement with Sene in this regard.   Nevertheless, these allegations could implicate a potential claim for deliberate indifference to safety.

To state claim for exposure to unsafe conditions, a prisoner must allege facts to show the existence of a prison condition that is extreme and poses an unreasonable risk

---

[2]Insofar as Plaintiff's complaint could be read as alleging a claim based on failure to follow this jail policy, such a failure does not, without more, amount to a constitutional violation.  *See Jones v. Schofield*, 2009 WL 902154, at 3 (M.D. Ga. Mar. 30, 2009) (*citing Rineholtz. v. Campbell* 64 F. Supp.2d 721, 731 (W.D.Tn. 1999) ("Prison regulations . . . were never intended to confer rights on inmates or serve as a basis for constitutional claims.").   Thus, it is also **RECOMMENDED** that any such claim be **DISMISSED WITHOUT PREJUDICE**.

the prisoner's health or safety.[3]   *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).   Additionally, the prisoner must allege facts to show that the defendant acted with deliberate indifference to the condition, which requires that the defendant knew that an excessive risk to health or safety existed but disregarded that risk.   *Id.* at 1289-90.

As an initial matter, although it appears from Plaintiff's allegations that Sene intended for the situation to be dangerous, it is not clear that Plaintiff was actually put into a situation that posed an unreasonable risk to Plaintiff's safety, as Plaintiff does not assert any facts showing that Smith attempted to harm Plaintiff in any way.   Moreover, even assuming that it was a dangerous situation, Plaintiff does not allege facts showing that he suffered any damage from being put into a cell with Smith or that this is an ongoing situation for which prospective relief would be appropriate.   Therefore, in this regard, Plaintiff has not stated a claim for deliberate indifference to safety on which relief could be granted, and it is **RECOMMENDED** that his deliberate indifference claim against Sene be **DISMISSED WITHOUT PREJUDICE**.

B.   Lieutenant Foster

As to Lieutenant Foster, Plaintiff's only allegations are that when Mrs. Wells ordered that Plaintiff be separated from Tyrone Polk, Foster refused and said that, if anything happened between them, Plaintiff would receive a new charge.   Thereafter,

---

[3] As with a conditions of confinement claim, although a pretrial detainee's deliberate indifference claim is governed by the Fourteenth Amendment due process clause, rather than the Eighth Amendment, the standards governing such claims are the same under either Amendment.   *See Goodman v. Kimbrough*, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013).

Polk attacked Plaintiff and cut him.   It appears that Plaintiff intended for these allegations to raise a claim for deliberate indifference to safety.

In this regard, Plaintiff alleges facts suggesting that putting him into the cell with Polk constituted a dangerous situation insofar as Polk did try to harm Plaintiff. Moreover, Plaintiff's allegations also suggest that Foster knew that the situation was potentially dangerous because Mrs. Wells had ordered Plaintiff to be held alone and had tried to have Polk moved out of the cell to keep them separate because she was worried that there would be harmful consequences if they were housed together. Therefore, Plaintiff's allegations are sufficient to allow him to proceed on a deliberate indifference to safety claim against Lieutenant Foster.   *See Chandler*, 379 F.3d at 1289.

C.   Dr. Patillo

Next, Plaintiff asserts that Dr. Patillo ordered that Plaintiff be discharged from the H.S.P. cell, purportedly based on Plaintiff having been observed masturbating, even though Plaintiff continued to feel suicidal.   Plaintiff contends, however, that this was not a proper reason for discharging Plaintiff from the H.S.P. cell.   After Plaintiff was discharged from the H.S.P. cell into a solitary confinement cell, Plaintiff attempted suicide by cutting himself.   Plaintiff asserts that Dr. Patillo was deliberately indifferent to Plaintiff's safety.

On this point, Plaintiff's assertions suggest that inmates having suicidal thoughts are kept in H.S.P. cells for their protection, which further suggests that moving a detainee to a solitary confinement cell while they are continuing to have such thoughts

is potentially dangerous.   Moreover, Plaintiff had not indicated that he had stopped having these thoughts when Dr. Patillo ordered that Plaintiff be moved out of the H.S.P. cell.   Thus, it is possible that Dr. Patillo's decision to discharge Plaintiff from the H.S.P. cells amounted to deliberate indifference to Plaintiff's safety, and Plaintiff will be allowed to proceed for further factual development on this claim.   *See id.*

### D.   Officer Ferguson

As to Officer Ferguson, Plaintiff asserts that, after Mrs. Wells ordered that Polk be discharged from the H.S.P. cell so that he would be separated from Plaintiff, Ferguson brought Polk back and put him into the cell with Plaintiff again.   Plaintiff warned Ferguson that Plaintiff and Polk did not get along and it was not a good idea for them to be held in the cell together, but Ferguson falsely claimed not to know anything about the situation and left.   These allegations implicate a potential deliberate indifference to safety claim.

As discussed above with regard to Foster, Plaintiff's allegations suggest that this was a dangerous situation insofar as he and Polk did not get along and Polk ultimately attacked Plaintiff.   At this point, it is not clear whether Plaintiff will be able to present evidence showing that Ferguson was actually aware of, and deliberately indifferent to, the danger, but in light of Mrs. Wells decision to try to separate the two, it seems possible that Ferguson was also deliberately indifferent in this regard.   Thus, Plaintiff will also be permitted to proceed for further factual development on this claim.

### E.   Mrs. Wells

With regard to mental health therapist Mrs. Wells, Plaintiff asserts that, during

his initial stay in the H.S.P. cells discussed in this case, Mrs. Wells ordered that Plaintiff be kept in a cell by himself to ensure that he did not harm himself or anyone else, although he ultimately was kept with other inmates because of the actions of the officers.   Additionally, on November 19, 2021, after Plaintiff told Mrs. Wells that he was still feeling suicidal and had tried to cut himself with his fingernail, she said that she had heard he was observed masturbating and that she would have to discharge him from the H.S.P. cell.   It was on this occasion that Plaintiff was moved to a solitary confinement cell, where he tried to kill himself.   After Plaintiff had been back in the H.S.P. cell for several days, Mrs. Wells tried to have Plaintiff separated from Polk for their protection, but the officers brought Polk back later that day, and Polk subsequently attacked Plaintiff.

Although she was unsuccessful in having Plaintiff housed alone, Plaintiff's allegations show that on the first and last stays in the H.S.P. cells discussed herein, Mrs. Wells took steps to try to have Plaintiff separated from other inmates.   Thus, these allegations do not implicate a claim for deliberate indifference.   With regard to Plaintiff's November 19, 2021, discharge from the H.S.P. cells, however, Plaintiff's allegations show that he told Mrs. Wells he was still feeling suicidal, but she nonetheless ordered his discharge from the H.S.P. cell.   And on his discharge from the H.S.P. cell, Plaintiff did attempt suicide.   Therefore, Plaintiff will be allowed to proceed for further factual development on a deliberate indifference to safety claim against Mrs. Wells relating to the November 19 discharge from the H.S.P. cells.

F.     Sergeant Moore and Officer Green

Plaintiff includes both Sergeant Moore and Officer Green as defendants in this matter.   Plaintiff's only allegation against Moore and Green are that, on one occasion each, they put Plaintiff into an H.S.P. cell without a blanket or mattress.   It seems that Plaintiff may be attempting to state a conditions of confinement claim against these defendants.   For the same reason that the conditions of confinement claim fails with regard to Sergeant Sene, however, Plaintiff also has not stated a claim against Officer Green or Sergeant Moore.   Thus, it is also **RECOMMENDED** that these claims be **DISMISSED WITHOUT PREJUDICE**.

G.     Retaliation Generally

Plaintiff makes a number of general allegations that various actions were taken in retaliation for his filing grievances and lawsuits.   For instance, he suggests that Dr. Patillo and Mrs. Wells moved him out of the H.S.P. cell on one occasion in retaliation, rather than for their stated reason that he had been observed masturbating.   Plaintiff also alleges that he was denied a blanket and mattress on multiple occasions and that officers refused to house him alone, all in retaliation.

In this regard, Plaintiff asserts that he engaged in constitutional speech and that arguably adverse actions were taken against him.   Except with regard to his claim against Sergeant Sene that is discussed above, however, Plaintiff makes only broad and conclusory allegations that these acts were retaliatory.   He provides no specific factual support that any of the other defendants acted in retaliation for his filing grievances or lawsuits.   Thus, other than the retaliation claim against Sergeant Sene, it is

18

**RECOMMENDED** that Plaintiff's retaliation claims be **DISMISSED WITHOUT PREJUDICE**.  *See Twombly*, 550 U.S. at 555-56.

      H.     <u>John Doe Officers</u>

Finally, Plaintiff also includes multiple John Doe defendants in the caption of this complaint.   Fictitious party pleading, *i.e.*, bringing claims against John Doe defendants, is generally only permitted in federal court when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his or her actual name is unknown.  *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).   Here, Plaintiff provides no description of the defendant officers involved in his claims from which the officers could be identified for service. Moreover, Plaintiff does not include any explanation as to the roles of these officers in the events underlying his claims to show that they violated his rights in any way. Accordingly, it is **RECOMMENDED** that Plaintiff's claims against the John Doe Officers be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

      IV.    <u>Conclusion</u>

Therefore, Plaintiff will be allowed to proceed for further factual development on his retaliation claim against Sergeant Sene and his deliberate indifference to safety claims against Lieutenant Foster, Dr. Patillo, Officer Ferguson, and Mrs. Wells.   It is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim as discussed above.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written

objections to this Order and Recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Order and Recommendation.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

For those reasons discussed above, it is hereby **ORDERED** that service be made on **DEFENDANTS SERGEANT SENE, LIEUTENANT FOSTER, DR. PATTILLO, OFFICER FERGUSON, and MRS. WELLS**, and that they file an Answer, or other response as appropriate under the Federal Rules, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are also reminded of the duty to avoid unnecessary service expenses, and the possible imposition of expenses for failure to waive service.

## DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) for failure to prosecute.   Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff.

Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court.   This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first).   The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party.   The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND

22

THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party is required to respond to any request which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but no later than one hundred-twenty (120) days from when the discovery period begins.

**SO ORDERED and RECOMMENDED**, this 17th day of February, 2022.

/s/ Stephen Hyles_____
UNITED STATES MAGISTRATE JUDGE